# Jacob Loeser's Estate.   Jacob H. Loeser's Appeal.

*Will—Devisavit vel non—Testamentary capacity—Undue influence.* ·

A testator has the right to do as he deems best with his own property, to prefer one child to another, or disinherit one or more at his discretion. The court will not interfere with this statutory dominion for slight causes in order to produce an equality where a testator has seen fit to make inequality.

An issue devisavit vel non will not be granted on the ground of lack of testamentary capacity where the testimony shows that the will was executed nearly two years prior to testator's death, in the office of his conveyancer, by whom it had been prepared according to testator's instructions in the presence of two credible, disinterested, subscribing witnesses, and that although the testator was eighty-three years old, yet he was, in the opinion of the subscribing witnesses and his attending physician, possessed of remarkable mental vigor, business ability and knowledge of his affairs.

In such case an issue will not be granted on the ground of undue influence where, in addition to the above facts, it appears that the will was practically a counterpart of a will executed six years before, at which time it was not claimed that testator was under any undue influence, and where there was no evidence that the will in controversy was prepared through the interference or suggestion of the daughter benefited, or that she gave any instructions to the conveyancer, or that she was present at its execution, or that she ever had the will in her possession, or that she had used any deception or artifice to prejudice him against his other children.

Argued April 5, 1895.   Appeal, No. 185, Jan. T., 1895, by Jacob H. Loeser, from decree of O. C. Phila. Co., Jan. T., 1894, No. 192, dismissing appeal from register of wills, and refusing an issue devisavit vel non.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Appeal from register of wills.

The facts appear by the opinion of HANNA, P. J., which was as follows:

"It is but natural the contestants feel disappointed with the disposition made by their father of his estate, and are convinced it is most inequitable.   But they fail to recognize his right to do as he deemed best with his own property, to prefer one child above another, or disinherit one or more at his discretion.   This dominion and power conferred by statute and protected by the law is not to be interfered with for slight cause.   And it is not

for the courts to produce an equality where a testator has seen fit to make an inequality, merely to relieve the disappointment and chagrin of legatees whose equal or superior claims, in their opinion, have been unjustly disregarded.

" Here it is attempted to set aside the clearly expressed will of testator by alleging that he was of unsound mind and wanting in testamentary capacity at the date of its execution, and that he was induced to execute the testamentary paper through undue influence, exerted mainly by one of his daughters, a sister of the contestants, whereby she became the principal legatee.

" The will was executed on June 22, 1892, in the office of testator's conveyancer, by whom it had been prepared according to instructions received from him, in the presence of a well known member of the bar, and one of the most prominent builders in this city, an old and intimate friend of testator, both of whom became subscribing witnesses, and not only credible, but wholly disinterested.

" Although testator was approaching his eighty-third year, it is abundantly shown he was able to visit his conveyancer alone, consult with him, and, after the execution of his will, return to his home unattended, retaining the will in his possession. He lived until Jan. 11, 1894, almost two years thereafter, and, after his death, his will was found in the fire-proof safe in his dwelling, where he had placed it.

" After careful examination of the entire testimony, we fail to discover the slightest proof of want of testamentary capacity. It is very satisfactorily shown by the subscribing witnesses, the attending physician, and even by the contestants, that testator, although eighty-five years old at the date of his death, possessed remarkable mental vigor, business ability and knowledge of all his affairs. This so clearly appeared that the main force of the attack upon the validity of the will was confined to the allegation of undue influence and improper solicitation, charged to have been exercised by the favored daughter of testator.

" But here, too, the contestants fall far short of the proof required to entitle them to submit the question to trial by jury.

" In the first place, the will now attacked is practically a counterpart of a will executed by testator in 1886, prepared by the same conveyancer, and after the execution of the present

will, destroyed by testator, by tearing and burning, in the office of his conveyancer; and it is not alleged that testator was then of unsound mind, or that any undue or improper influence was used by his daughter in her own behalf.

"In the next place, there is not the slightest evidence that the will in contest was prepared through the interference or suggestion of testator's daughter, either directly or indirectly. She gave no instructions to the conveyancers, nor was she present at its execution, nor was it in her possession at any time.

"And, finally, there is no proof of any request or solicitation from her to her father that she should be preferred to her sisters or brothers, or that she ever used any deception, artifice or undue influence to prejudice him against them, and thus secure a larger share in his estate.

"In view of these facts, we have reached the conclusion that under the testimony here produced, such a case has arisen as falls within the well-settled rule that, unless the testimony be sufficient to sustain a verdict against the will, an issue should not be awarded; and it will be unjust to impose upon the parties the delay, expense and trouble of a trial, when such a verdict ought not to be sustained.

"The exceptions to the refusal to grant the issue are therefore dismissed, and the issue refused, at the costs of the contestants."

*Error assigned* was above decree.

*Hector T. Fenton, Avery D. Harrington* with him, for appellants, cited: Shaver v. McCarthy, 110 Pa. 346; Sharpless's Est., 134 Pa. 250; Worrall's App., 11 Atl. Rep. 380; Dent v. Bennett, 4 Mylne & C. 277; Samson v. Samson, 25 N. W. Rep. 233; Bowe v. Bowe, 3 N. W. Rep. 843; Jarman on Wills, vol. I. 5 Am. ed. 137; Smith v. Smith, 19 N. W. Rep. 49; Boyd v. Boyd, 66 Pa. 283; Cuthbertson's App., 97 Pa. 163; Wilson's App., 99 Pa. 545; Frew v. Clarke, 80 Pa. 170; Wilson v. Mitchell, 101 Pa. 495; Herster v. Herster, 116 Pa. 612; Bitner v. Bitner, 65 Pa. 362; Drake's App., 45 Conn. 9; Reichenbach v. Ruddach, 127 Pa. 564; Steadman v. Steadman, 14 Atl. Rep. 406; Forman v. Smith, 7 Lansing, 443.

*Robert W. Finletter* and *John G. Johnson*, for appellees, were not heard.

PER CURIAM, April 22, 1895:

We find nothing in this record that would justify us in sustaining either of the specifications of error. The issue devisavit vel non was rightly refused; and the decree is affirmed on the clear and convincing opinion of the learned president of the court below.

Decree affirmed and appeal dismissed with costs to be paid by appellants.